UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SCOTT KNIGHT

        Plaintiff,

    v.

ANTHONY KITCHEN, *et al.*,

        Defendants.

Case No. 2:19-cv-4166
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Currently pending before the Court is Defendants Tom Beckner, Brandon Cornelius, Corrections Officer R.O., Latoya Groh, the Guernsey County Sheriff's Office, Tanner Jackman, Michael Jeffrey, Shane King, Todd Knauf, Daulton Lowry, Phil Lumpkins,[1] Michelle Norris, Misty Pollock, Tim Reasoner, Rhonda Stage, Jon Stiers, Jim Stoney, and Chad Kerns' (collectively the "Moving Defendants") Motion for Judgment on the Pleadings. (ECF No. 7). Plaintiff responded. (ECF No. 9). And the Moving Defendants replied. (ECF No. 12). For the reasons stated herein, the Moving Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

**I.**

Plaintiff Scott Knight commenced this action on August 29, 2019 with the filing of a two-count Complaint alleging: 1) common law negligence ("Count I"); and 2) a violation of civil rights under 42 U.S.C. § 1983 (Count II), filed in the Guernsey County Court of Common Pleas. (*See* Compl. [ECF No. 2]). This matter was removed to federal court on September 19, 2019. (*See* Notice of Removal [ECF No. 1]). The Moving Defendants have moved for judgment as a

---

[1] Defendant Lumpkins was terminated from this matter on March 31, 2020, as such, the Court will not discuss any arguments pertaining to Defendant Lumpkins. (*See* ECF No. 32).

matter of law pursuant to Rule 12(c) on Count II as alleged against them. As this matter is before the Court on a motion under Rule 12 of the Federal Rules of Civil Procedure, the Court takes the facts alleged in Plaintiff's Complaint as true.

At the time relevant to this action, Plaintiff was incarcerated at the Guernsey County Jail and the Guernsey County Sheriff's Office had on file that Plaintiff suffered from the following medical conditions: Epilepsy, Fainting Spells, High Blood Pressure, a Psychiatric Disorder, and Seizures. (Compl. at ¶ 20). The actions that give rise to this Complaint occurred on or around August 29, 2018. (*Id.* at ¶ 9). On the night of August 29, 2018, Plaintiff was transported to the Southeastern Regional Medical Center ("SORMC") after the medical staff at the Guernsey County Jail grew concerned that Plaintiff was neither eating nor drinking. (*Id.*). Due to Plaintiff's deteriorated state, he was unable to sign his medical furlough. (*Id.*).

Plaintiff arrived at the SORMC Emergency Department at 9:34 p.m. with an "altered mental status." (*Id.* at ¶ 11). At the time of Plaintiff's hospitalization, he was taking 500 mg of Keppra, an anti-seizure medication, twice daily. (*Id.* at ¶ 12). Plaintiff's initial nursing assessment at SORMC noted that Plaintiff had a Glasgow Coma Scale of 13 out of 15 and SORMC's medical staff noted that Plaintiff was disoriented. (*Id.* at ¶¶ 13–14). Further, the notes provided by the Guernsey County Sheriff's Deputies indicated that Plaintiff "had stopped eating and drinking for 2 days, was not taking his medications, and had been urinating and defecating on himself for a similar period of time." (*Id.* at ¶ 15).

At or around 9:44 p.m., Plaintiff was seen by Dr. Anthony Kitchen. (*Id.* at ¶ 18). Plaintiff refused to provide Dr. Kitchen with his medical history. (*Id.* at ¶ 19). At approximately 9:51 p.m., SORMC staff noted that Plaintiff was failing to respond to questions and that his pupils were dilated. (*Id.* at ¶ 16). Dr. Kitchen diagnosed Plaintiff with dehydration despite Plaintiff having

2

been given intravenous fluids while in the Emergency Department. (*Id.* at ¶¶ 21–22).

Plaintiff was discharged from SORMC at approximately 1:51 a.m. on August 30, 2018 and, during discharge, Plaintiff indicated that he was unable to move. (*Id.* at ¶ 23). And just prior to his discharge, Plaintiff stated ". . . fine, then can you pass me that box on the ground" despite there being no box present. (*Id.* at ¶ 17) (internal quotations omitted). After his discharge from the hospital, Plaintiff returned to the Guernsey County Jail and was confined to a wheelchair. (*See id.* at ¶ 23). Upon arrival at the Guernsey County Jail, Plaintiff was unable to get out of the wheelchair. (*Id.* at ¶ 24). Due to his inability to get out of the wheelchair, Plaintiff defecated himself and was unable to shower because of his inability to stand. (*Id.* at ¶¶ 25–26). A corrections officer and nurse took Plaintiff to the jail's "Sallyport" and "spray[ed] off" the Plaintiff. (*Id.* at ¶ 27). Plaintiff began to exhibit "a decreased level of consciousness, evidence of postictal state, [and] urinary incontinence" causing him to audibly moan at approximately 5:10 a.m. (*Id.* at ¶ 28).

After returning to the Guernsey County Jail, Plaintiff suffered from several seizures. (*Id.* at ¶ 29). Following these seizures, Plaintiff was transported back to the SORMC Emergency Department, where he continued to suffer from seizures. (*Id.* at ¶¶ 30–31). While in the SORMC Emergency Department, Plaintiff was seen by Dr. Janak Patel and "was given several doses of Ativan" and was intubated to protect his airways due to his continued seizing. (*Id.* at ¶¶ 32–33). During the intubation process, Plaintiff went into cardiac arrest and required CPR and resuscitation. (*Id.* at ¶ 34). A CT scan revealed a pulmonary embolus in the right lower lobe of Plaintiff's pulmonary arteries. (*Id.* at ¶ 36). Plaintiff was stabilized and then transferred to Riverside Methodist Hospital ("Riverside"). (*Id.* at ¶ 37).

While at Riverside, Plaintiff "underwent an extensive workup including [an] EEG, which

3

showed some evidence of epilepsy." (*Id.* at ¶ 38). During his stay at Riverside, medical staff noted that Plaintiff was "intermittently confused, and potentially suffered an anoxic brain injury due to his cardiac arrest." (*Id.* at ¶ 39).

Plaintiff submits that the symptoms that he demonstrated while in the care of Dr. Kitchen were inconsistent with Dr. Kitchen's diagnosis of dehydration, rather they "were consistent with an altered mental status[,]" including subclinical seizures (*Id.* at ¶¶ 40–41). Plaintiff asserts that Dr. Kitchen's "[f]ailure to consider, diagnosis and treat Mr. Knight's epilepsy led to Mr. Knight's later decompensation, seizure, cardiac arrest, and intubation." (*Id.* at ¶ 44). Further, Plaintiff submits that, due to the jail staff's failure to give him his prescribed anti-seizure medication, he was at a heightened risk of suffering a seizure and "the painful associated conditions." (*Id.* at ¶ 45). Had he received his anti-seizure medication, Plaintiff maintains that "he likely would not have suffered seizures and the resulting cardiac arrest, pain, and suffering." (*Id.* at ¶ 46). Furthermore, Plaintiff likely would not have had suffered the seizures and the following cardiac arrest if the corrections and nursing staff, who were all aware of Plaintiff's preexisting condition and prescribed medications, would have sent Plaintiff to the hospital immediately upon him displaying symptoms rather than waiting for two days after the onset of symptoms. (*Id.* at ¶¶ 47–48).

Plaintiff's two-count Complaint alleges: 1) a state law negligence claim; and 2) deliberate in difference, in violation of U.S. Const. Amend. VIII and XIV and 42 U.S.C. § 1983. Plaintiff brings his negligence claim against only Dr. Kitchen and brings his § 1983 claim against the Guernsey County Sheriff's Office and the named employees of the Guernsey County Sheriff's Office. The Moving Defendants now move for judgment on the pleadings on Plaintiff's second claim alleged against them, asserting that they are entitled to qualified immunity because Plaintiff has failed to adequately plead that any of the Moving Defendants violated his constitutional rights

4

and that Plaintiff has similarly failed to allege a *Monell* claim against Guernsey County. Plaintiff opposes this motion.

## II.

The Court reviews a Rule 12(c) motion for judgment on the pleadings in the same manner it would review a motion made under Federal Rule of Civil Procedure 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). Rule 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Generally, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013) (citing *Ranch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.* Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). To meet this standard, a complaint must contain a sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*).

Several considerations inform whether a complaint meets the facial-plausibility standard. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Further, the factual allegations of a pleading "must be enough to raise a right to relief about the speculative level. *Twombly*, 550 U.S. at 555. A complaint will not, however, "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 555 U.S. at 557). Courts must construe the claim at issue in the light

5

most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

III.

**A.      Documents not part of Plaintiff's Complaint**

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "Under a well-established exception to Rule 12(d), courts may consider documents attached to a Rule 12(b)(6) or 12(c) motion without converting either into a summary-judgment motion if the attached materials are: (i) 'referred to in the plaintiff's complaint and are central to [the] claims' or (ii) 'matters of public record.'" *Kassem v. Ocwen Loan Servicing, LLC*, 704 F. App'x 429, 432 (6th Cir. 2017) (quoting *McLaughlin v. CNS Gas Co., LLC*, 639 F. App'x 296, 298–99 (6th Cir. 2016)); *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

Attached to Plaintiff's Response are three exhibits: 1) Plaintiff's records from the Guernsey County Jail and the Ohio Department of Rehabilitation ("ODRC"), (Pl. Records [ECF No. 9-1]); 2) still photographs from officers' body cameras and cruiser cameras, (Pictures [ECF No. 9-2]); and 3) a manual and signup sheet from the Guernsey County Jail's 2018 Annual Healthcare Jail Staff Training, (Healthcare Training Manual [ECF No. 9-3]). Plaintiff appears to submit that these documents are properly before the Court under the public records exception. (*See* Response at 4). The Moving Defendants assert that the Court cannot consider these documents without converting the pending motion into one for summary judgment because the exhibits attached to the Response do not fit within the exceptions to Rule 12(d)'s requirements. (Reply at 4). The Court will discuss each exhibit separately.

### 1. Plaintiff's Records

Plaintiff's Records do not fit within the exceptions to Rule 12(d)'s general rule that courts are prohibited from relying on evidence outside of the pleadings when ruling on a Rule 12 motion. Plaintiff obtained these records after his attorney requested such information from ODRC and the Guernsey County Jail. (*See* Pl. Records at PAGEID ## 113–115). With regard to consideration of public records in the context of a Rule 12 motion, the Sixth Circuit has explained: "in order to preserve a party's right to a fair hearing, a court, on a [Rule 12 motion], must only take judicial notice of facts which are not subject to reasonable dispute." *Passa v. City of Cleveland*, 123 F. App'x 694, 697 (6th Cir. 2005); *see also Platt v. Bd. of Comm'rs. on Grievances & Discipline of the Ohio Supreme Court*, 894 F.3d 235, 245 (6th Cir. 2018) (courts may take judicial notice of some public records but "[s]uch notice . . . is limited: a court may take notice of the documents and what they say, but it '[cannot] consider the statements contained in the document for the truth of the matter asserted.'") (quoting *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014)).

Further, other courts have expressly found that, for the purpose of ruling on a Rule 12 motion, inmate medical records and police incident reports are not "public records." *See Mighty v. Miami-Dade Cty.*, No. 14-232285-CIV, 2015 WL 5031571, at *12–13 (S.D. Fla. June 9, 2015) (declining to consider an incident report despite it being a "public record" because the plaintiff did not attach it to the complaint or reference it therein and the contents of the report were in dispute); *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022–23 (S.D. Cal. 2006) (finding that an inmate's medical records are not public records subject to judicial notice (citing *United States v. Burch*, 169 F.3d 666, 672 (10th Cir. 1999))); *Freeman v. Town of Hudson*, 714 F.3d 29. 36 (1st Cir. 2013) (finding that police incident reports and 911 transcripts are not subject to judicial

notice and, therefore, not "public records" in the scope of a Rule 12 motion).

Here, the Court finds the above-cited caselaw persuasive and finds that Plaintiff's Records are not subject to judicial notice and, thus, cannot be considered public records for the purpose of considering the pending Rule 12 motion. Accordingly, the Court will not consider Plaintiff's Records (ECF No. 9-1) when ruling on the pending Rule 12 motion.

### 2. Photographs

The second exhibit attached to the response are still photographs of what appears to be Plaintiff and law enforcement personnel. (*See generally* Photographs). The Court will not consider the photographs attached as Exhibit 2 to the Response when ruling on the Moving Defendants' Rule 12(c) motion. Sixth Circuit law is clear: a court is not required to review evidence which "captures only part of the incident and would provide a distorted view of the events at issue[.]" *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (internal quotations omitted); *see also Passa*, 123 F. App'x at 697.

In *Jones v. City of Cincinnati*, this Court declined to consider video evidence when ruling on a motion to dismiss stating that "while the video may accurately reflect a portion of the incident, a reasonable dispute may still exist as the entirety of the events alleged in the Complaint." No. 1:04-cv-616, 2006 WL 2987820, at *4 (S.D. Ohio Oct. 17, 2006), *aff'd* 521 F.3d 555 (6th Cir. 2008). The *Jones* Court logic remains sound. Here, while the photographs submitted by Plaintiff may accurately display a portion of the incidents alleged in the Complaint, it is clear that a reasonable dispute remains as to the totality of those events. Accordingly, the Court declines to take judicial notice of the pictures attached as Exhibit 2 to the Response (ECF No. 9-2).

### 3. Healthcare Training Manual

The final attachment to Plaintiff's Response is a Healthcare Training Manual issued by the

8

Guernsey County Jail. (*See generally* Healthcare Training Manual). Plaintiff obtained the Healthcare Training Manual after submitting a public records request to the Guernsey County Sheriff's Office and ODRC. (Response at 3). But as acknowledged above, documents obtained through a public records request are not *per se* documents that are appropriate for judicial notice at the Rule 12 stage. *See supra* § III. A. 1. And, Plaintiff has failed to demonstrate that the Healthcare Training Manual are materials that are capable of being judicially noticed so to fit within the public records exception. Furthermore, the decision of whether to consider material outside of the pleadings is up to the discretion of the Court. *See Jones*, 2006 WL 2987820, at *4. The Court is not inclined to exercise such discretion and will not consider the Healthcare Training Manual when deciding the Moving Defendants' pending motion.

Thus, based on the foregoing, Plaintiff has failed to demonstrate that any of the documents attached to his Response fit within either of Rule 12(d)'s exception. The Court is disinclined to convert the Moving Defendants' pending Rule 12 motion into one for summary judgment. The Court, therefore, will not consider the materials that Plaintiff has attached to his Response when ruling on the merits of the Moving Defendants' Rule 12 motion.

**B.  Qualified Immunity**

Plaintiff brings his claim against the Moving Defendants under 42 U.S.C. § 1983 alleging that the Moving Defendants violated his Eighth Amendment right against cruel and unusual punishment. Section 1983 is not itself a source of substantive rights but provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a claim under § 1983, a plaintiff must allege: (1) conduct by an individual acting under color of state law; and (2) deprivation of rights secured by the Constitution or laws of the United States. *Day v. Wayne Cty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) (*Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

Plaintiff claims that the Moving Defendants failure to provide adequate and timely medical care violated his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment. The Eighth Amendment protects incarcerated individuals by requiring that officials "ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs[.]" *Phillips v. Roane Cty.*, 534 F.3d 531, 539 (6th Cir. 2008) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

To establish a violation of the Eighth Amendment, a plaintiff must establish both objective and subjective components. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The plaintiff must demonstrate that his medical condition posed a substantial risk of harm to him and that the prison officials acted with deliberate indifference to that risk. *Id.* at 702–03. "Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986). And to satisfy the subjective component, the plaintiff must demonstrate that the jail officials "subjective perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."

10

*Comstock*, 273 F.3d at 703; *see also Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) ("to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk").

The Moving Defendants, however, have raised the affirmative defense of qualified immunity. Qualified immunity affords governmental officials protection "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (internal quotations omitted). Under this two-part test, the Court must determine: 1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and 2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *see also Adams v. Ohio Univ*, 300 F. Supp. 3d 983, 1001 (S.D. Ohio 2018). The Court may address these prongs in either order and if both prongs are not established, the government officials are entitled to qualified immunity. *Doe v. Miami Univ.*, 882 F.3d 570, 604 (6th Cir. 2018).

The Sixth Circuit has recognized that while "insubstantial claims against government officials should resolved as early in the litigation as possible, . . . it is generally inappropriate for a district court to grant a [Rule 12] motion to dismiss on the basis of qualified immunity." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (internal citations omitted). Rather, this Circuit has recognized that "an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, [but] that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433–43

11

(6th Cir. 2015) (internal citations omitted). At the Rule 12 stage, courts "review an assertion of qualified immunity to determine only whether the complaint 'adequately alleges the commission of acts that violated clearly established law.'" *Back v. Hall*, 537 F.3d 552, 555 (6th Cir. 2008) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

"A constitutional right is clearly established where its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right—in other words, where it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Daily Servs., LLC v. Valentino*, 756 893, 900 (6th Cir. 2014) (internal quotation marks and citations omitted). "To be clearly established, a right must have been decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged violation occurred." *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001).

The Moving Defendants assert that judgment as a matter of law in their favor is appropriate because "Plaintiff asserts allegations collectively against all 'Defendants' or 'staff' or 'employees of Guernsey County Sheriff's Office' generally" rather than attributing specific acts or omissions to a specific Defendant. (*See* Mot. for J. on Pl. at 5). A plaintiff is required to allege facts attributable to each named defendant to sufficiently plead his § 1983 claim against that defendant. *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002); *see also Jordan v. Summit Cty., Ohio*, No. 5:17-cv-02047, 2018 WL 4225598, at *6 (N.D. Ohio Sept. 11, 2018) (stating that a plaintiff is required to plead with particularity the acts of each defendant to avoid dismissal under Rule 12 (citing *Courtright*, 839 F.3d at 518)). And this Circuit's precedent is clear: "[T]he subjective component of a deliberate indifference claim must be addressed for each officer individually." *Winkler v. Madison Cty.*, 893 F.3d 877, 891 (6th Cir. 2018) (internal quotations omitted and

alteration in original) (quoting *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008)).

Plaintiff acknowledges that, at this time, he is largely unable to attribute specific acts to a named Defendant. (Response at 3–4). Given the current pleadings, the plaintiff has not alleged any specific acts or omission of each moving defendant. In an abundance of caution, the Court will permit the plaintiff the opportunity to move to amend his complaint, subject to any opposition of the defendants. If such motion to amend is not made within fourteen days, the motions to dismiss will be granted.

### 1. Guernsey County Sheriff's Office

The Moving Defendants correctly point out that "under Ohio law, a county sheriff's office is not a legal entity capable of being sued for purposes of § 1983." *Petty v. Cty. of Franklin, Ohio*, 78 F.3d 31, 347 (6th Cir. 2007) (citing *Barrett v. Wallace*, 107 F. Supp. 2d 949, 954 (S.D. Ohio 2000)). Plaintiff has failed to draw the Court's attention to any precedent that contradicts this. (*See* Response at 4–5). Accordingly, the Moving Defendant's motion is **GRANTED** as to the Guernsey County Sheriff's Office.

### 2. *Monell* Claim

Plaintiff brings his § 1983 claim against Defendants Stoney,[2] Defendant Jeffrey, Defendant Jackman, and Defendant Pollock in their official capacities. (*See* Compl. at ¶¶ 5–8). "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989)). Thus, the Court will interpret Plaintiff's claims against Defendants Stone, Jeffrey, Jackman, and Pollock in their official capacities as a *Monell* claim

---

[2] Plaintiff does not explicitly assert that he brings this § 1983 action against Defendant Stoney in his official capacity. (*See* Compl. at ¶ 5). Plaintiff, however, does allege that "at all times relevant" Defendant Stoney was in a "supervisory role" at the Guernsey County Jail. (*Id.*). The Court, therefore, will construe that Plaintiff has asserted his deliberate indifference claim against Defendant Stoney in both his individual and official capacity.

13

against Guernsey County.

To succeed on a *Monell* claim a plaintiff must demonstrate that he was deprived of a constitutional or statutory right because of the governmental entity's policy or custom. *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017). A plaintiff can make a showing of a governmental entity's illegal custom or policy by demonstrating: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Plaintiff's Complaint does not allege the existence of an illegal custom or policy; that an official with final decision-making authority condoned illegal acts; a policy of inadequate training or supervision; or a custom of tolerance. In his Response, Plaintiff asserts that several policies are "woefully inadequate to properly care for the medical needs of Ohioans who are remanded to the custody and control of the County." (Response at 4). But Plaintiff failed to allege of the illegalities of such policies, or even the existence of these policies, in his Complaint. (*See generally* Compl.). And the Court has already declined to consider documents outside of the pleadings when ruling on the pending motion. *See supra.* § III. A. Accordingly, Plaintiff's § 1983 claim against Defendants Stoney, Jeffrey, Jackman, and Pollock in their official capacities, which the Court construes as a *Monell* claim against Guernsey County, is insufficient. Accordingly, the Moving Defendants' motion on Plaintiff's *Monell* claim is **GRANTED**.

### 3.    Jim Stoney

In the Complaint, Plaintiff alleges that Jim Stoney was a "Jail Administrator in a

14

supervisory role over Defendants, Deputy Michael Jeffrey, Deputy Tanner Jackman, and Deputy Misty Pollock." (Compl. at ¶ 5). Throughout the Complaint, Plaintiff has failed to attribute any specific actions in which Defendant Stoney engaged. (*See generally* Compl.). The Complaint, therefore, fails to allege that Defendant Stoney engaged in an activity that violated Plaintiff's constitutional rights.

To the extent that Plaintiff attempts to hold Defendant Stoney liable under a theory of supervisory liability, such claim is similarly deficient. Precedent is clear: "A supervisor's mere failure to supervise is insufficient, the plaintiff must 'show that the supervisors somehow encouraged or condoned the actions of their inferiors.'" *Abdulsalaam v. Franklin Cty. Bd. of Com'rs*, 637 F. Supp. 2d 561, 578–79 (S.D. Ohio 2009) (quoting *Gregory v. City of Louisville*, 44 F.3d 725, 751–52 (6th Cir. 2006)). The Complaint is devoid of any facts to support the conclusion that Defendant Stoney specifically encouraged or condoned any alleged unconstitutional acts of his inferiors. (*See generally* Compl.). Plaintiff, therefore, has not demonstrated that Defendant Stoney violated a clearly established constitutional right by engaging in such alleged violation himself or actively promoting his inferiors to engage in such a violation. Accordingly, the Court **GRANTS** the Moving Defendants' motion as to Defendant Stoney.

### 3.    Michael Jeffrey

Michael Jeffrey, at the times relevant to the Complaint, was allegedly "a Guernsey County Jail Shift Supervisor acting within the scope of his duties and an agent of the Guernsey County Sheriff's Office and was in a supervisory role over Defendants, Tanner Jackman, and Misty Pollock. He is sued in his individual and official capacities." (Compl. at ¶ 6). Plaintiff failed to allege any actions that Defendant Jeffrey specifically engaged in that violated Plaintiff's rights. (*See generally* Compl.). And to the extent that Plaintiff alleges supervisory liability against

15

Defendant Jeffrey, that claim also fails because Plaintiff has not drawn the Court's attention to facts in the Complaint that support the conclusion that Defendant Jeffrey encouraged or condoned Defendants Jackman or Pollock to engage in such illegalities. The Moving Defendant's motion as to Defendant Jeffrey is therefore **GRANTED**.

      **4.**      **Tanner Jackman**

Plaintiff alleges that, at all relevant times, Tannera Jackman was "a Guernsey County Jail Commanding Officer acting within the scope of his duties and an agent of the Guernsey County Sheriff's Office. He is sued in his individual and official capacities." (Compl. at ¶ 7). Plaintiff's claim against Defendant Jackman fails for the same reasons that his claims against Defendants Stoney and Jeffrey failed. Plaintiff has not alleged specific facts that, when taken as true, demonstrate that Defendant Jackman either: 1) personally engaged in behavior that violated a clearly established constitutional right; or 2) encouraged or condoned his inferiors to engage in such behavior. As such, the Motion for Judgment on the Pleadings as to Defendant Jackman is **GRANTED**.

      **5.**      **Misty Pollock**

The Complaint asserts that, at all times relevant to the Complaint, Misty Pollock was "a Guernsey County Jail Commanding Officer acting within the scope of her duties and an agent of the Guernsey County Sheriff's Office. She is sued in her individual and official capacities." (Compl. at ¶ 8). As before, Plaintiff has failed to allege any individual actions taken by Defendant Pollock that demonstrate that she personally violated Plaintiff's constitutional right or that she condoned or encouraged others to infringe upon Plaintiff's rights. The Court, therefore, **GRANTS** the Moving Defendants' motion as to Defendant Pollock.

      **6.**      **Remaining Moving Defendants**

Plaintiff also brings his § 1983 claim against: Brandon Cornelius, Jon Stiers, Corrections Officer R.O., Shane King, Tom Beckner, Michelle Norris, Chad Kerns, Rhonda Stage, LaToya Groh, Tim Reasoner, Daulton Lowry, and Todd Knauf. Apart from being named in the header of the Complaint, Plaintiff has not mentioned these Defendants in the substance of his Complaint. (*See generally* Compl.). As stated *supra* for a plaintiff's claim to survive a Rule 12 motion, he must allege facts attributable to each defendant. *See Lanman*, 529 F.3d at 684. Here, Plaintiff failed to attribute any allegations of unconstitutional behavior to any of these Defendants. Thus, the Moving Defendants' motion as to Defendants Cornelius, Stiers, Corrections Officer R.O., King, Beckner, Norris, Kerns, Stage, Groh, Reasoner, Lowry, and Knauf is **GRANTED**.

## IV.

For the reasons stated herein, the Moving Defendants' Motion for Judgment on the Pleadings (ECF No. 7) is granted, unless the plaintiff moves to amend the Complaint within fourteen days. Defendants Guernsey County Sheriff's Office, Jim Stoney, Michael Jeffrey, Tanner Jackman, Misty Pollock, Brandon Cornelius, Jon Stiers, Corrections Officer R.O., Shane King, Tom Beckner, Michelle Norris, Chad Kerns, Rhonda Stage, LaToya Groh, Tim Reasoner, Daulton Lowry, and Todd Knauf are hereby dismissed from this action insofar as they are sued in an official capacity.

**IT IS SO ORDERED.**

9-21-2020
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE